Scott M. Lempert (SL 4238)
(A Member of the Bar of this Court)
SANDALS & ASSOCIATES, P.C.
One South Broad Street, Suite 1850
Philadelphia, PA 19107
Tel:  (215) 825-4011 / Fax:  (215) 825-4001

Lynn Lincoln Sarko
Gretchen Freeman Cappio
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Tel:  (206) 623-1900 / Fax:  (206) 623-3384

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY 10003
Tel: (646) 495-6198 / Fax: (646) 495-6197

Todd S. Collins
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000 / Fax:  (215) 875-4604

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAIMEE BOYD, individually and on behalf of all others similarly situated, ) | |
| Plaintiff, ) | No. |
| ) | |
| v. ) | CLASS ACTION COMPLAINT |
| ) | |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC. ) | JURY DEMAND |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Jaimee Boyd, individually and on behalf of all others similarly situated, alleges the following based upon information and belief, and upon the investigation of counsel:

**<u>INTRODUCTION</u>**

This class action is brought by Plaintiff individually and on behalf of all purchasers ("Class Members") of Johnson's Baby Shampoo ("Children's Personal Care Product"). The Children's Personal Care Product was manufactured by: Johnson & Johnson Consumer Companies, Inc. ("J&J"), whose principal place of business, upon information and belief, is One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

1.     Although Defendant represented that the product it made, marketed, and sold was safe for children, upon information and belief, the Children's Personal Care Product was contaminated with toxic chemicals linked to increased cancer risk, skin allergies, and other health problems. These harmful chemicals include formaldehyde and 1,4-dioxane, as well as other potential contaminants. As noted above, the contaminated bath product is Johnson's Baby Shampoo (a J&J product). Simply put, this product is not the safe, healthful item it is represented to be.

2.     Given their small size, and the disproportionate impact toxins can have on their bodies, children are especially vulnerable to the effects of chemicals. Parents and caregivers have a right to know that the products they buy for their children are safe—and they have a right to expect that Defendant's advertisements and other representations are truthful when they say that their product is gentle, pure, tear-free, fresh, clean, suitable for sensitive skin, and/or safe. Thus, Plaintiff and the Class Members were damaged by Defendant's omissions and failure to warn that the Children's Personal Care Product was contaminated.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this action is between citizens of different states, a class action has been pled, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

4.      Venue is proper in this District under 28 U.S.C. §§ 1391(a), (b), and (c); 28 U.S.C. § 1407; and 15 U.S.C. § 22.  Defendant does substantial business in the State of New Jersey and within this Federal Judicial District, advertises in this District, receives substantial compensation and profits from the sales of its Children's Personal Care Product, and has made material omissions and misrepresentations and breaches of warranties in this District so as to subject it to personal jurisdiction in this District.

## PARTIES

5.      Plaintiff Jaimee Boyd resides in Golden, Colorado, and from 2008 through April 2009, purchased Defendant's bath product for use with her young child.  Had Defendant fully disclosed the true nature of the ingredients in the Children's Personal Care Product, Ms. Boyd would neither have purchased it nor allowed her child to be exposed to it.  As a result, Plaintiff Jaimee Boyd has been damaged.

6.      Defendant J&J is a New Jersey corporation and engages in business throughout the State of New Jersey and the United States.  J&J manufactured, marketed and/or sold Johnson's Baby Shampoo to Class Members during the relevant period.  According to the Campaign for Safe Cosmetics, Analytical Sciences, an independent California laboratory, found 1,4-dioxane levels of 1.1 ppm and formaldehyde levels of 210 ppm in Johnson's Baby Shampoo. Further, upon information and belief, additional laboratory testing of Johnson's Baby Shampoo

may reveal contamination with one or more substances that is prohibited when used as an ingredient in cosmetics.

## FACTUAL BACKGROUND

7.     Defendant marketed its Children's Personal Care Product as safe and gentle, using such descriptive passages on its product labels as: "as gentle to the eyes as pure water,"[1] and "No More Tears."[2]  However, laboratory tests conducted by Analytical Sciences laboratory found that this and other similar products were contaminated with formaldehyde or 1,4-dioxane—and in many cases, *both*.  Upon information and belief, additional laboratory testing of Johnson's Baby Shampoo may reveal contamination with one or more substances that are prohibited when used in cosmetics.  This Children's Personal Care Product, which contains chemicals linked to cancer and skin allergies, is anything but the safe and gentle product that Defendant claims.

**A.     Children are Especially Vulnerable to Toxins.**

8.     Scientists and policy makers around the world now accept that children are a particularly vulnerable group deserving special attention when identifying and prioritizing which environmental contaminants affect children's health.[3]  For example, in 1997, the EPA established a policy requiring consideration of health risks to infants and children in all risk assessments, risk characterizations, and environmental standards.

9.     Children's health must be considered separately from that of adults when evaluating environmental factors and risks because children's diet differs from adults, and per

---

[1] Johnson's Baby Shampoo product label and internet advertisement, *available at* http://www.johnsonsbaby.com/product.do?id=47 (last visited June 11, 2009).

[2] Johnson's Baby Shampoo product label and internet advertisement, *available at* http://www.johnsonsbaby.com/product.do?id=47 (last visited June 11, 2009).

[3] J. Grigg, *Environmental Toxins; Their Impact on Children's Health*, 89 Arch. Dis. Child, 244 (2004), *available at* www.adc.bmj.com.

unit of body weight, children consume more food and water, and breathe more air.[4]  Children's immature organs are especially sensitive and their external surfaces absorb more toxic material. Furthermore, normal behavior of infants and toddlers encourages ingestion of non-food items, such as personal care products, and children's rapid growth increases the long term accumulation of chemicals.

**B.     Formaldehyde.**

10.     Formaldehyde is a colorless, flammable, strong-smelling chemical that is used to manufacture building materials and some household products.  National Cancer Institute Fact Sheet, Formaldehyde and Cancer: Questions and Answers, *available at* http://www.cancer.gov/cancertopics/factsheet/risk/formaldehyde (last visited June 11, 2009).

11.     Personal care products can be contaminated with formaldehyde when it is released from a number of common preservatives.

12.     An expert review of cosmetics preservatives published in February 2009 demonstrated that preservation of cosmetics potentially leads to increased incidences of contact allergy, and that efficient preservation can be readily obtainable with preservative concentrations well below frequently used levels.[5]

13.     Approximately five years ago, a working group of the World Health Organization called the International Agency for Research on Cancer, concluded that formaldehyde is carcinogenic to humans.  IARC Classifies Formaldehyde as Carcinogenic to Humans, Press Release, June 30, 2004, http://www.iarc.fr/en/media-centre/pr/2004/pr153.html.

---

[4] *Id.*

[5] Michael Dyrgaard Lundov et al., Contamination versus preservation of cosmetics:  a review on legislation, usage, infections, and contact allergy, Contact Dermatitis, 2009 60: 70-78.  *available at:* http://www3.interscience.wiley.com/cgu-bub/fulltext/121667177/PDFSTART?CRETRY=1&SRETRY=0

14.     The EPA has also classified formaldehyde as a probable carcinogen.  The chemical can trigger adverse skin reactions in children and adults.  Contact dermatitis specialists recommend that children avoid exposure to products containing formaldehyde.[6]

15.     When formaldehyde is present in soaps and shampoos, children and adults can be exposed by inhaling the formaldehyde that is off-gassed from the product, by ingesting it or by absorbing it through the skin.

16.     The Eleventh Annual Report on Carcinogens, published by the U.S. Department of Health and Human Services, National Toxicology Program, states: "Formaldehyde (gas) is reasonably anticipated to be a human carcinogen based on limited evidence of carcinogenicity in humans and sufficient evidence of carcinogenicity in experimental animals."[7]

17.     As a chemical pollutant, formaldehyde is an irritant and is considered a "probable" carcinogen, according to the State of New Jersey Department of Environmental Protection.  *See* Fact Sheet on Formaldehyde, *available at* http://www.state.nj.us/dep/dsr/njcrp/formaldehdye.pdf [sic].

**C.     1,4-dioxane.**

18.     1,4-dioxane is a volatile, colorless liquid with a mild, ethereal odor.  According to the National Toxicology Program, 1,4-dioxane is "*reasonably anticipated to be a human carcinogen*" based on sufficient evidence of carcinogenicity in experimental animals.  National Toxicology Program, Report on Carcinogens, 11th Edition; U.S. Department of Health and

---

[6] Environmental Protection Agency Technology Transfer Network Air Toxics Web Site, *Formaldehyde* (Nov. 6, 2007), www.epa.gov/ttn/atw/hlthef/formalde.html (last visited June 11, 2009).

[7] U.S. Department of Health and Human Services, Public Health Service, National Toxicology Program, *Formaldehyde (Gas) CAS No. 50-00-0: Reasonably anticipated to be a human carcinogen,* Eleventh Report on Carcinogens (Dec. 2002), *available at*: http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s089form.pdf.

Human Services, Public Health Service, National Toxicology Program, January 2005, *available at* http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s080diox.pdf.

19.     In shampoo, 1,4-dioxane is a byproduct of ethoxylation, a chemical processing technique in which cosmetics ingredients are processed with ethylene oxide.  It is relatively simple for manufacturers of ethoxylated ingredients to remove the contaminant through vacuum stripping at the end of the ethoxylation process.  According to the FDA, vacuum stripping can be done "without an unreasonable increase in raw material cost."[8]  Manufacturers can easily remove the toxic byproduct.[9]

20.     According to the Environmental Protection Agency ("EPA"), 1,4-dioxane is a probable carcinogen.  The federal Consumer Product Safety Commission ("CPSC") stated that "the presence of 1,4-dioxane, even as a trace contaminant, is cause for concern."

21.     1,4-dioxane is widely recognized as a carcinogen in animal studies and expert panels consider it to be a known or probable human carcinogen:

- According to the New Jersey Department of Health and Senior Services, 1,4-dioxane "should be handled as a carcinogen—with extreme caution."[10]

- The EPA classifies 1,4-dioxane as a "probable human carcinogen," based on "induction of nasal cavity and liver carcinomas in multiple strains of rats, liver carcinomas in mice, and gall bladder carcinomas in guinea pigs."[11]

- The U.S. Department of Health and Human Services, National Toxicology Program, lists 1,4-dioxane as "reasonably anticipated to be a human carcinogen."

---

[8] U.S. Food and Drug Administration, GUIDE TO INSPECTIONS OF COSMETIC PRODUCT MANUFACTURERS, www.fda.gov/ora/inspect_ref/igs/cosmet.html (last visited June 11, 2009).

[9] U.S. Food and Drug Administration, GUIDE TO INSPECTIONS OF COSMETIC PRODUCT MANUFACTURERS, www.fda.gov/ora/Inspect_refigs/cosmet.html (last visited June 11, 2009).

[10] New Jersey Department of Health and Senior Services, HAZARDOUS SUBSTANCE FACT SHEET (2006), *available at* http://nj.gov/health/eoh/rtkweb/documents/fs/0789.pdf.

[11] U.S. Environmental Protection Agency, Technology Transfer Network Air Toxics Web Site, *1,4-Dioxane (1,4-Diethyleneoxide)* (2000), www.epa.gov/ttn/atw/hlthef/dioxane.html.

The report notes: "There is sufficient evidence for the carcinogenicity of 1,4-dioxane in experimental animals.[12]

- According to the International Agency for Research on Cancer, an initiative of the World Health Organization, 1,4-dioxane is "possibly carcinogenic to humans.[13]

- The State of California's EPA lists 1,4-dioxane on its publically mandated annual list of chemicals known to cause cancer or reproductive toxicity.[14]

**D.     Defendant's Children's Personal Care Product.**

22.     J&J's Baby Shampoo states the following on its website:

JOHNSON'S® Baby Shampoo

This mild, tearless formula baby shampoo is as gentle to the eyes as pure water

JOHNSON'S® knows bath time is a special time to share with your baby, and when the two of you are bonding, there's no room for tears. Our classic NO MORE TEARS® formula rinses quickly and easily. Leaves hair smelling fresh, and looking beautifully healthy and shiny. Soap free, hypoallergenic, and dermatologist tested.

http://www.johnsonsbaby.com/product.do?id=47 (visited June 11, 2009).

23.     However, the much-touted claim that J&J's Baby Shampoo is "as gentle to the eyes as pure water" is false and misleading.

24.     According to the packaging, the product is "made from a very special combination of ingredients designed not to irritate delicate skin or eyes" and is "soap free, hypo-allergenic and dermatologist tested."  It is also "the number one choice of hospitals."  J&J also claims on its website that "safety, comfort and gentleness are always of utmost importance in our products."  *See* http://www.johnsonsbaby.com/whyJnj.do.

---

[12] U.S. Department of Health and Human Services, Public Health Service, National Toxicology Program, 1,4-DIOXANE, CAS NO. 123-91-1:  REASONABLY ANTICIPATED TO BE A HUMAN CARCINOGEN, Eleventh Report on Carcinogens (Dec. 2002), *available at* http://ntp.niehs.nih.gov/ntp/roc/eleventh/profiles/s080diox.pdf.

[13] International Agency for Research on Cancer, 1,4-DIOXANE (GROUP 2B) 589 Vol. 71, (1999), *available at* http://monographs.iarc.fr/ENG/Monographs/vol71/mono71-25.pdf.

[14] State of California Environmental Protection Agency Office of Environmental Health Hazard Assessment, CHEMICALS KNOWN TO THE STATE TO CAUSE CANCER OR REPRODUCTIVE TOXICITY (2006), *available at* www.oehha.ca.gov/prop65/prop65_list/files/P65single120806.pdf.

25.     After testing, however, Johnson's Baby Shampoo was found to be contaminated with formaldehyde and 1,4-dioxane. Analytical Sciences, an independent California laboratory, detected 1,4-dioxane levels of 1.1 ppm and formaldehyde levels of 210 ppm.

26.     Upon information and belief, additional laboratory testing of Johnson's Baby Shampoo may reveal contamination with one or more substances that are prohibited when used as ingredients in cosmetics.

27.     On information and belief, Johnson's Baby Shampoo does not list formaldehyde, 1,4-dioxane, or other toxic ingredients on the label.

28.     J&J's advertising claims appeal to parents' desire to be gentle and loving to their children—yet, J&J never discloses that Johnson's Baby Shampoo contains dangerous chemicals.

29.     J&J knew, or should have known, that Johnson's Baby Shampoo was defective and presented a serious risk to the health and safety of children.

30.     If Plaintiff and Class Members had known the true nature of Johnson's Baby Shampoo, they would not have purchased it, or allowed their children to be exposed to it.

31.     As a result of Defendant's negligence or intentional or reckless wrongdoing as set forth herein, Plaintiff's child and the children of Class Members have been directly exposed on a prolonged, repeated and continuous basis, to a significantly and substantially harmful material, causing an increased risk of injury.

## CLASS ACTION ALLEGATIONS

32.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a national Consumer Class (with the designation of statewide subclasses if the Court deems necessary and appropriate) defined as follows:

All Consumers who are residents of the United States who purchased any of the aforementioned Children's Personal Care Products.

Excluded from the proposed Class are (i) any Defendant, any entity in which any Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, and assigns; (ii) the judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

33.     The proposed Class consists of many thousands of persons throughout the United States, making individual joinder of all proposed Class Members impractical.

34.     All proposed Class Members share a united interest in the fair, just, and consistent determination of the questions of law and fact necessary to the adjudication of Defendant's liability, which predominate over questions affecting only individual members.  These key common liability questions include:

a.      whether and when Defendant knew or should have known that its Children's Personal Care Product had dangerous defects;

b.      whether Defendant knowingly, recklessly, or negligently concealed, suppressed or failed to disclose the true ingredients and safety of its Children's Personal Care Product from regulators, and the public;

c.      whether Defendant's conduct violated state consumer protection statutes and state fraud and deceptive practice acts;

d.      whether Defendant breached implied warranties covering its Children's Personal Care Product;

e.      whether Defendant acted negligently by withholding from disclosure the true ingredients in its product in the sale and promotion of its Children's Personal Care Product;

f.      whether Defendant was unjustly enriched at the expense of Plaintiffs and the proposed Class Members; and

g.      whether a national class or statewide classes, and/or other subclasses, are superior, within the requirements of Rule 23(b)(3), on any of the claims.

35.     The proposed Class is also united on fundamental questions regarding its members' entitlement to damages and equitable relief, including:

a.      whether proposed Class Members are entitled to damages and/or equitable relief based on their payments for the Children's Personal Care Product;

b.      if proposed Class Members are so entitled, what is the appropriate scope, extent and measure of damages and equitable relief that should be awarded;

c.      whether the degree of reprehensibility of Defendant's conduct warrants the imposition of punitive damages under controlling authority; and,

d.      whether proposed Class Members are entitled to attorneys' fees, prejudgment interest and costs of suit.

36.     Plaintiff's claims and defenses are typical of the claims and defenses of the proposed Class because Defendant uniformly misrepresented the safety of its Children's Personal Care Product, and uniformly and actively suppressed, concealed, and failed to disclose the material risks of exposure associated with the product on the product label and in advertisements.  Defendant's uniform conduct deprived Plaintiff and all members of the proposed Class of their ability to make an informed decision about whether to use and/or pay for Defendant's Children's Personal Care Product.

37.     Plaintiff and her counsel will fairly and adequately assert and protect the interests of all members of the proposed Class.  Plaintiff has retained counsel who are competent and experienced in complex class action litigation, including consumer litigation.  Plaintiff has no

interest adverse to those of any absent Class Members, with respect to the key common issues of Defendant's product design, labeling, and marketing.

38.     All members of the proposed Class share a common interest in the determination of all factual and legal issues pertinent to Defendant's liability through the disgorgement and restitution of Children's Personal Care Product revenue unjustly obtained by Defendant.

39.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(A), because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for Defendant.

40.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(1)(B) because the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the other members not parties to these adjudications and/or substantially impair their ability to protect these interests.

41.     Class certification is proper under Federal Rule of Civil Procedure 23(b)(3) because common issues of law and fact predominate over any questions affecting only individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

42.     Class adjudication is superior to individual litigation, which would foreclose the ability of most Class Members to litigate their claims, impose an undue burden on the courts, and result in inconsistent determination of common issues.  The Court may employ issue certification under Rule 23(c)(4)(B), to address any variation of law, fact, or interest from the standpoint of

fairness, efficiency, and economy, in order to avoid denial of class treatment which would require reversion to repetitive and piecemeal individual litigation.

43.     The need for Class-wide notice presents no barrier to certification because notice can be effectively disseminated to the proposed Class by techniques commonly used in consumer class actions.  Notice may be provided to proposed Class Members under the requirements of Fed.R.Civ.P. 23(c)(2) by such combination of print publication, broadcast publication, internet publication, and/or first class mail that this Court determines best comports with modern Fed.R.Civ.P. 23(c)(2) class notice form, content, and dissemination techniques, as used in other medical products liability cases and as recommended by the Manual for Complex Litigation, 4th and the Federal Judicial Center.

## COUNT I

### Breach of Implied Warranty

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Defendant marketed, promoted, manufactured and sold its Children's Personal Care Product and placed it into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Children's Personal Care Product was purchased, and impliedly warranted that its Children's Personal Care Product was of merchantable quality and fit for such use.  Contrary to these representations, the Children's Personal Care Product was defective as it contained toxic and hazardous chemicals and was unsafe for children.

46.     At all times, New Jersey (N.J. Stat. Ann. §12A:2-314) and the following 48 states listed below, including the District of Columbia, have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability: Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann. §4-2-314; Cal. Com. Code §2314; Colo. Rev. St §4-2-314; Conn. Gen. Stat. Ann. §42a-2-314; 6 Del. C. §2-314; D.C. Code §28:2-314; Fla. Stat. Ann. §672.314; Ga. Code Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; Idaho Code §28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Ind. Code Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kan. Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann. §355.2-314; La. Civ. Code Ann. art. §2520; 11 Me. Rev. Stat. Ann. §2-314; Md. Code Ann. §2-314; Mass. Gen. Laws Ch. 106 §2-314; Mich. Comp. Laws Ann. §440.2314; Minn. Stat. Ann. §336.2-314; Miss. Code Ann. §75-2-314; Mo. Rev. Stat. §400.2-314; Mont. Code Ann. §30-2-314; Nev. Rev. Stat. U.C.C §104.2314; N.H. Rev. Ann. §382-A:2-314; N.M. Stat. Ann. §55-2-314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. Ann. §25-2-314; N.D. Stat §41-02-314; Ohio Rev. Code Ann. §1302.27; Okla. Stat. tit. 12A §2-314; Or. Rev. Stat. §72.3140; 13 Pa. Stat. Ann. §2314; R.I. Gen. Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Stat. §57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2-314; Utah Code Ann. §70A-2-314; Va. Code §8.2-314; Vt. Stat. Ann. 9A §2-314; W. Va. Code §46-2-314; Wash. Rev. Code §62A 2-314; Wis. Stat. Ann. §402.314; and Wyo. Stat. §34.1-2-314.

47.     As designers, manufacturers, producers, marketers and sellers of the Children's Personal Care Product, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

48.     The Defendant designed, manufactured, distributed, marketed and/or sold the Children's Personal Care Product and represented to Plaintiff and the Class that it manufactured

14

and sold a high quality and safe Bath Product that complied with all applicable state and federal regulations. Further, by selling the Children's Personal Care Product to Plaintiff and the Class, Defendant has derived a substantial amount of revenue.

49.     The Children's Personal Care Product is a "good," as defined in the various states' commercial codes governing the implied warranty of merchantability.

50.     As merchants of the Children's Personal Care Product, Defendant knew that purchasers relied upon it to design, manufacture and sell a Children's Personal Care Product that was reasonably safe and would not endanger their children's health.

51.     Defendant designed, manufactured and sold the Children's Personal Care Product to parents of young children, and it knew that such products would be used by young children.

52.     The Defendant specifically represented in its marketing and advertising that this Children's Personal Care Product was of high quality, safe, and complied with state and federal regulations. Moreover, the Defendant specifically marketed and sold the Children's Personal Care Product as appropriate for infants, and young children, with marketing materials that touted the fact that the product was "tearless" and "gentle."

53.     At the time that Defendant designed, manufactured, sold and/or distributed the Children's Personal Care Product, Defendant knew the purpose for which the product was intended and impliedly warranted that the product was of merchantable quality; was free of hazardous chemicals; was free of manufacturing defects such as the presence of formaldehyde, 1,4-dioxane, or other toxic contaminants; was free of design defects; and was safe and fit for their ordinary purpose—as bath and personal care products for young infants and children.

54.     Defendant breached its implied warranties in connection with its sale of the Children's Personal Care Product to Plaintiff and members of the Class. The Children's

Personal Care Product was not safe and fit for its ordinary purposes and intended uses on children.  It was not free of defects, as evidenced by the presence of the toxic chemicals formaldehyde, and 1,4-dioxane and other toxic contaminants in a product intended for direct application to children's skin and hair—all chemicals which can cause health damage, including the potential increased risk of cancer, and skin allergies.

55.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and other members of the Class's injuries include, but are not limited to the purchase price of the Children's Personal Care Product, and exposure to the toxic chemicals formaldehyde, 1,4-dioxane and other toxic contaminants in its Children's Personal Care Product.

## COUNT II

### Negligence – Design, Manufacturing Defect and Failure to Warn

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     Defendant designed, manufactured, sold, and/or distributed its Children's Personal Care Product to parents of young children.

58.     The Children's Personal Care Product contained formaldehyde, 1,4-dioxane, and/or other toxic contaminants when it left the hands of Defendant.

59.     Defendant had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of the Children's Personal Care Product, including a duty to ensure that the Children's Personal Care Product did not contain formaldehyde, 1,4-dioxane, and/or any other toxic contaminant, and a duty to warn that the Children's Personal Care Product contained these toxic and carcinogenic chemicals.

60.     Defendant failed to exercise reasonable care in the design, manufacture, sale, and/or distribution, of the Children's Personal Care Product.

61.     Specifically, Defendant was negligent in its design, manufacture, testing, inspection, sale and/or distribution of the Children's Personal Care Product in that it:

A.     Failed to use reasonable care in formulating and manufacturing the Children's Personal Care Product so as to avoid the harmful risks of possibly exposing children to formaldehyde, 1,4-dioxane, and other toxic contaminants as discussed above;

B.     Failed to conduct adequate product testing of the Children's Personal Care Product to determine the actual safety of the Children's Personal Care Product prior to sale;

C.     Failed to accompany the Children's Personal Care Product with fair, proper, and complete ingredient labels and warnings regarding the possible adverse health effects associated with children's exposure to formaldehyde, 1,4-dioxane, and other toxic contaminants.

62.     Despite the fact that Defendant knew or should have known that the Children's Personal Care Product could cause adverse health effects, Defendant continued to market and sell the Children's Personal Care Product to consumers, including Plaintiff and members of the Class.

63.     Defendant knew or should have known that Plaintiff and members of the Class would foreseeably be put at risk to inhale, ingest, and absorb hazardous substances into their bloodstreams, and to suffer adverse health effects as a result of Defendant's failure to warn of the complete ingredients in the Children's Personal Care Product, and adverse health effects associated with children's exposure to this product, including the presence of formaldehyde, 1,4-dioxane, and other toxic contaminants in the product.

64.   Defendant's negligence proximately caused Plaintiff and the Class to be injured, through exposure to hazardous substances such as formaldehyde, 1,4-dioxane, and/or other toxic contaminants and increased risk of serious health problems.

65.   Plaintiff's negligence claims relate to injuries that she and Class members sustained as a result of the Children's Personal Care Product.

## COUNT III

### Breach of the Implied Warranties of Merchantability and Fitness for a Particular Purpose

66.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

67.   Defendant sold and promoted its Children's Personal Care Product and placed it into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Children's Personal Care Product was purchased and impliedly warranted that its Children's Personal Care Product was of merchantable quality and fit for such use.

68.   Plaintiff and the proposed Class Members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant, and upon its implied warranty that its Children's Personal Care Product was of merchantable quality and fit for its intended use.

69.   Defendant knew, should have known, or had reason to know that Plaintiff and the Class Members were influenced to approve and purchase its Children's Personal Care Product because of Defendant's expertise, skill, judgment, and knowledge in furnishing its Children's Personal Care Product for that use.

70.   Defendant's Children's Personal Care Product was not of merchantable quality and was not fit for its intended use, because it contained substances dangerous to humans, especially small children.

71.     Defendant breached the implied warranty that its Children's Personal Care

Product was of merchantable quality and fit for use in violation of the following state statutes:

Ala. Code § 7-2-314, *et. seq.*, Alaska St. § 45.02.314, *et. seq.*, Ariz. Rev. Stat. Ann § 47-2314, *et.*

*seq.*, Ark. Code Ann. § 4-2-314, *et. seq.*, Cal. Comm. Code § 2314, *et. seq.*, Co. Rev. St. § 4-2-

314, *et. seq.*, Conn. Gen. Stat. Ann, § 42a-2-314, *et. seq.*, 6 Del. C. § 2-314, *et. seq.*., D.C. Code

§ 28:2-314, *et. seq.*, Fla. Stat. Ann. § 672.314, *et. seq.*, Ga. Code. Ann. § 11-2-314, *et. seq.*, Haw.

Rev. Stat. § 490:2-314, *et. seq.*, Id. Code § 28-2-314, *et. seq.*, Ill. Comp. Stat. Ann. Ch. 810, 5/2-

314, *et. seq.*, Ind. Code Ann. § 26-1-2-314, *et. seq.*, Iowa Code Ann. § 554.2314, *et. seq.*, Kansas

Stat. Ann. § 84-2-314, *et. seq.*, Ken. Rev. Stat. Ann. § 355.2-314, *et. seq.*, La. Civ. Code Ann.

Art. 2520, *et. seq.*, 11 Maine Rev. Stat. Ann. § 2-314, *et. seq.,* Md. Code Ann., Com. Law § 2-

314, *et. seq.*, Mass. Gen. Laws Ann. Ch. 106 § 2-314, *et. seq.*, Mich. Comp. Laws Ann.

§ 440.2.314, *et. seq.*, Minn. Stat. Ann. § 336.2-314, *et. seq.*, Miss. Code Ann. § 75-2-314, *et.*

*seq.*, Missouri Rev. Stat. § 400.2-314, *et. seq.*, Mont. Code Ann. § 30-2-314, *et. seq.*, Nev. Rev.

Stat. U.C.C. § 104.2314, *et. seq.*, N.H. Rev. Stat. Ann. § 382-A:2-314, *et. seq.*, N.J. Stat. Ann.

§ 12A:2-314, *et. seq.*, N.M. Stat. Ann. § 55-2-314, *et. seq.*, N.Y. U.C.C. Law 2-314, *et. seq.*,

N.C. Gen. Stat. Ann. § 25-2-314, *et. seq.*, N.D. Stat. § 41-02-314, *et. seq.*, Ohio Rev. Code Ann.

§ 1302.27, *et. seq.*, 12A Okla. Stat. § 2-314, *et. seq.*, Or. Rev. Stat. § 72.3140, *et. seq.*, 13 Pa.

Stat. Ann. § 2314, *et seq*., R.I. Gen. Laws § 6A-2-314, *et. seq.*, S.C. § 36-2-314, *et. seq.*, S.D.

Stat. 57A-2-314, *et. seq.*, Tenn. Code Ann. § 47-2-314, *et. seq.*, Tex. Bus. & Com. Code Ann.

§ 2.314, *et. seq.*, Ut. Code Ann. § 70A-2-314, *et. seq.*, Va. Code Ann. § 8.2-314, *et. seq.*, Vt.

Stat. Ann. § 9A-2-314, *et. seq.*, Wa. Rev. Code § 62A.2-314, *et. seq.*, W.Va. Code § 46-2-314, *et*

*seq.*, Wis. Stat. Ann. § 402.314, *et. seq.*, Wyo. Stat. § 34.1-2-314, *et. seq.*

72.     As a proximate cause of Defendant's breach of warranty, Plaintiff and the Class suffered ascertainable losses, injuries, and damages as specified herein in an amount to be determined at trial.

## COUNT IV

## Products Liability

73.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

74.     At all relevant times hereto, Defendant was engaged in the business of designing, manufacturing, assembling, and selling the Children's Personal Care Product with the knowledge that it would be used by children and children's parents and caregivers.

75.     Defendant's Children's Personal Care Product was expected to, and did, reach children without substantial change in its condition as manufactured and sold by Defendant.  Due to the product defects described herein, at the time the Children's Personal Care Product reached the Plaintiff and proposed Class Members, it was in a condition not contemplated by any reasonable person.  The Children's Personal Care Product was unreasonably dangerous to its expected users when used in a reasonably expected manner.

76.     The Children's Personal Care Product designed, manufactured, marketed, and sold by Defendant to the Plaintiff and Class Members was in a defective condition which was unreasonably dangerous.

77.     The Plaintiff and proposed Class Members used the Children's Personal Care Product in the manner in which Defendant intended it to be used.

78.     Neither the Plaintiff nor the proposed Class Members were aware of, and could not in the exercise of reasonable care have discovered, the defective nature of Defendant's

79.     As a direct and proximate result of Defendant's negligently placing the defective product in the stream of commerce, Plaintiff and the proposed Class Members were injured and have expenses.

80.     Defendant's Children's Personal Care Product is dangerous for its reasonably intended use, due to its defective design and manufacture, and misinformation in Defendant's marketing.

## COUNT V

### Negligence

81.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

82.     Defendant owed a duty of reasonable care to the Plaintiff and the Class Members in the design, manufacture, labeling, and marketing of its Children's Personal Care Product.

83.     Defendant breached this duty by allowing a negligently produced, designed, and marketed Children's Personal Care Product into the stream of commerce.

84.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class Members were injured and have incurred expenses and will continue to incur expenses in the future.

## COUNT VI

### Violation of the Various Unfair and Deceptive Trade Practices Acts

85.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

86.     Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of its Children's Personal Care Product.

87.     Had Defendant not engaged in the deceptive conduct described above, Plaintiff and the Class Members would not have purchased and/or paid for the Children's Personal Care Product.

88.     Defendant's deceptive, unconscionable or untruthful representations and material omissions to consumers and the public, including Plaintiff and the Class Members, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below:

a.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et. seq.*;

b.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et. seq.*;

c.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et. seq.*;

d.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et. seq.*;

e.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770, *et. seq., and Cal Bus. & Prof. Code § 17200, *et. seq.*;

f.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et. seq.*;

g.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 2-110a, *et. seq*.;

h.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, *et. seq*., and 2531, *et. seq.*;

i.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et. seq*.;

j.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et. seq.*;

k.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §§ 10-1-372, *et. seq.*, 10-1-392 and 10-1-420;

l.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et. seq.*;

m.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et. seq.*;

n.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et. seq*.;

o.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5-1, *et seq.*;

p.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.16, *et. seq.*;

q.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et. seq.*;

r.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et. seq.*;

s.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et. seq.*;

t.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 205A, *et. seq.*;

u.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et. seq.*;

v.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93 A, *et. seq.*;

w.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et. seq.*;

x.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et. seq.*; 325 F.67, *et. seq.*; and 325 F.68, *et. seq.*;

y.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et. seq.*;

z.      Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et. seq.*;

aa.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. § 30-14-101, *et. seq.*;

bb.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et. seq.*;

cc.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 59S.0903, *et. seq.*;

dd.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et. seq.*;

ee.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et. seq.*;

ff.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et. seq.*;

gg.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, *et seq*,. and 350-e, *et. seq.*;

hh.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*:

ii.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, *et. seq.*, and 51-15-01, *et. seq.*;

jj.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et. seq.*;

kk.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et. seq.*;

ll.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et. seq.*;

mm.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et. seq.*;

nn.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et. seq.*;

oo.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et. seq.*;

pp.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et. seq.*;

qq.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et. seq.*;

rr.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et. seq.*;

ss.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, *et. seq.*;

tt.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et. seq.*;

uu.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et. seq.*;

vv.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.0 10, *et. seq.*;

ww.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et. seq.*;

xx.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and,

yy.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-101, *et. seq.*.

89.     Plaintiff and members of the class relied upon Defendant's misrepresentations and/or omissions in buying Defendant's Children's Personal Care Product.

25

90.     Plaintiff will provide any required notice to appropriate entities regarding Defendant's unfair and deceptive trade practices.

91.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members have been damaged by paying for this Children's Personal Care Product.

92.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and the Class Members are entitled to compensatory damages, treble damages, attorneys' fees and costs of this suit.

**COUNT VII**

**Unjust Enrichment**

93.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

94.     Defendant has been, and continues to be, unjustly enriched, to the detriment of and at the expense of Plaintiff and the Class Members, as a result of its unlawful and/or wrongful collection of, inter alia, the Plaintiff's and the Class Members' payments for Defendant's Children's Personal Care Product such that Defendant's retention of such payments is inequitable.

95.     Defendant has unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Defendant's Children's Personal Care Product, and continues so to benefit to the detriment of and at the expense of the Plaintiff and the proposed Class Members.

96.     Accordingly, Defendant should not be allowed to retain the proceeds from the benefits conferred upon it by the Plaintiff and the proposed Class Members, who seek disgorgement of Defendant's unjustly acquired profits and other monetary benefits resulting

from its unlawful conduct, and seek restitution and/or rescission for the benefit of Plaintiff and

the proposed Class Members, in an equitable and efficient fashion to be determined by the Court.

97. Plaintiff and the proposed Class Members are entitled to the imposition of a

constructive trust upon Defendant such that their enrichment, benefit and ill-gotten gains may be

allocated and distributed equitably by the Court to and/or for the benefit of the proposed Class

Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, for herself and all others similarly situated, respectfully

requests that this Court enter a judgment against Defendant and in favor of Plaintiff, and grant

the following relief:

A. Determine that this action may be maintained as a class action with respect to a

national class or with subclasses corresponding to the several states' laws, pursuant to the

appropriate subsections of Rule 23 of the Federal Rules of Civil Procedure; that the Court certify

a class action with respect to particular issues if appropriate, and that the Court designate and

appoint Plaintiff and her counsel to serve as Class Representative and Class Counsel;

B. Declare, adjudge and decree the conduct of Defendant as alleged herein to be

unlawful;

C. Grant Class Members awards of actual, compensatory, punitive and/or exemplary

damages in such amount to be determined at trial and as provided by applicable law;

D. Grant Class Members their costs of suit, including reasonable attorneys' fees, and

expenses as provided by law; and

E. Grant Class Members such other, further, and different relief as the nature of the

case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 26th day of June, 2009.

s/Scott M. Lempert
Scott M. Lempert (SL 4238)
(A Member of the Bar of this Court)
slempert@sandalslaw.com
One South Broad Street, Suite 1850
Philadelphia , PA 19107
Tel:  (215) 825-4011 / Fax:  (215) 825-4001

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Gretchen Freeman Cappio
gcappio@kellerrohrback.com
Laura R. Gerber
lgerber@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, W A 98101
Tel:  (206) 623-1900 / Fax:  (206) 623-3384

KELLER ROHRBACK L.L.P.
David S. Preminger
dpreminger@kellerrohrback.com
275 Madison Avenue, Suite 1425
New York, NY  10016
Tel:  (212) 878-8890 / (212) 878-8895

BERGER & MONTAGUE, P.C.
Todd S. Collins
tcollins@bm.net
Neil F. Mara
nmara@bm.net
1622 Locust Street
Philadelphia, PA  19103
Tel:  (215) 875-3000 / Fax:  (215) 875-4604

*Co-Counsel for Plaintiffs and the Proposed Class*