NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAIMEE BOYD and JESSICA POLLOCK, individually and on behalf of all others similarly situated, | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 09-CV-3135 (DMC-MF) |
| JOHNSON & JOHNSON CONSUMER COMPANIES, INC., | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Johnson & Johnson Consumer Companies, Inc. ("Defendant") to dismiss the Amended Class Action Complaint ("Complaint") of Jaimee Boyd and Jessica Pollock, individually and on behalf of all others similarly situated, ("Plaintiffs") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. 12(b)(1). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendant's motion to dismiss is **granted in part** and **denied in part**.

**I    BACKGROUND**

The Amended Complaint is brought individually and on behalf of all class purchasers ("Class Members") of J&J's Baby Shampoo and/or Aveeno Baby Wash and Shampoo ("products").

(Plaintiffs' Complaint ("Pl. Compl."), ¶ 1). Plaintiffs allege that "although Defendant represented that the products it made, marketed, distributed, promoted and sold were safe for children, its Children's Personal Care Products were actually contaminated with toxic chemicals linked to increased cancer risk, adverse skin reactions, and other serious health problems." (Pl. Compl., ¶ 2). Plaintiffs further allege that despite representations made by Defendant that their products are safe and gentle, these products contain contaminants that are not disclosed on the label and that could otherwise have been removed, or at least reduced, pursuant to a process called vacuum stripping. (Pl. Compl., ¶¶ 2, 5).

Plaintiffs assert that independent lab tests, conducted in accordance with regulations promulgated by the Environmental Protection Agency ("EPA"), reveal that J&J's Baby Shampoo contains methylene chloride in levels as high as 1.1 ppm, 1,4 dioxane levels as high as 38 ppm, and formaldehyde levels as high as 210 ppm.(Pl. Compl., ¶¶ 3, 44). "After testing, [J&J's] Aveeno Baby Wash and Shampoo was found to be contaminated with 1,4-dioxane. Independent Lab Tests found 1,4-dioxane levels of 13 ppm." (Pl. Compl., ¶ 54). Plaintiffs also assert that each of the foregoing qualifies as a cosmetic pursuant to the Food Drug and Cosmetic Act because each is "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance" and is not "soap." 21 U.S.C. § 321(i) (2008). (Pl. Compl., ¶¶ 48, 58).

Count I of the Complaint asserts a claim for breach of implied warranty pursuant to the Uniform Commercial Code ("UCC") § 2-314. (Pl. Compl. ¶ 83). Count II of the Complaint asserts a claim for breach of implied warranties of merchantability and fitness for a particular use. (Pl. Compl., ¶ 90). Count III of the Complaint asserts a claim for unfair and deceptive trade practices.

(Pl. Compl., ¶ 95). Count IV of the Complaint asserts a claim for unjust enrichment. (Pl. Compl., ¶ 103).

## II.   STANDARD OF REVIEW

"There is a fundamental difference of review under Rule 12(b)(1), where the existence of disputed facts will not preclude the court from evaluating the merits of the jurisdictional claim, and Rule 12(b)(6) where the court is required to accept as true all the allegations of the complaint and all inferences arising from them." Anjelino v. New York, 200 F.3d 73, 87 (3d Cir. 1999). "[T]he threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." Kehr Packages Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

### A.   Fed. R. Civ. P. 12(b)(6)

"The [d]istrict [c]ourt, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [is] required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Bell, 550 U.S. at 555-56.

B.     Fed. R. Civ. P. 12(b)(1)

"On a Rule 12(b)(1) motion, no presumption of truthfulness attaches to the allegations of the plaintiff." CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. (citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007)).

**III.     DISCUSSION**

A.     Standing

To bring a suit in a federal court, Plaintiffs must have standing pursuant to Article III of the United States Constitution. To establish standing under Article III, Plaintiffs must show: (1) injury in fact; (2) causation; and (3) redressability. Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 455 (3d Cir. 2003); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. (citing AT&T Communications of N.J., Inc.v. Verizon N.J., Inc., 270 F.3d 162, 170 (3d Cir. 2001)). "The injury must affect the plaintiff in a personal and individual way." Pitt News v. Fisher, 215 F.3d 354 (3d Cir. 2000); Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009).

"[O]rdinarily, one may not claim standing .... to vindicate the constitutional rights of some

third party." Pitt, 215 at 362. "We apply this prudential rule against third party standing even when the requirements of Article III have been met, to 'avoid deciding questions of broad social import . . . [and] to limit access to the federal courts to those litigants best suited to assert a particular claim.'" Id. (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979)). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Berg v. Obama, 586 F.3d 234, 239 (2009) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). Furthermore, "[t]he standing inquiry does not change in the context of a putative class action….[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." Koronthaly v. L'Oreal, 2008 U.S. Dist. LEXIS 59024, *12 (D.N.J. July 25, 2008).

Defendant contends that "Plaintiff[s'] failure to plead any manifest, present, non-speculative injury, and failure to allege that [the products] did not provide cleansing benefits" requires the Court to conclude that Plaintiffs lack standing in the instant matter. In reliance upon this Court's decision in Koronthaly, Defendant asserts that Plaintiffs' demand for a refund of the purchase price as a consequence of exposure to Defendant's products fails to establish an injury-in-fact and therefore, is not sufficient to confer standing where the alleged harm is no more than conjectural or hypothetical. As a result, Defendant claims that the absence of a cognizable injury and thereby standing in this matter requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1).

In response, Plaintiffs contend that economic injury is sufficient to confer standing in this matter, relying upon Clinton v. City of New York, 524 U.S. 417 (1998) and Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286 (3d Cir. 2005). Plaintiffs contend that where the product contains

undisclosed toxins and an ingredient banned by the FDA, the injury arises at the time of purchase. In distinguishing the Koronthaly v. L'Oreal case, citing to this Court's disposition on a motion for reconsideration, Plaintiffs assert that unlike Koronthaly where this Court determined that plaintiff "provided no authoritative evidence that the lead levels in defendants' lipstick products constitute[d] a dangerous amount or [were] in some way prohibited[,]" the present action involves methylene chloride, a substance banned by the FDA for use in cosmetics. 2008 U.S. Dist. LEXIS 86419, *11 (D.N.J. Oct. 24, 2008). Further, Plaintiffs contend that the EPA classifies the other chemicals at issue as probable carcinogens. Lastly, Plaintiffs assert that their claims should stand because Plaintiffs have at least raised an issue of fact with respect to whether the chemicals contained in Defendant's products are dangerous in amount.

      The Koronthaly case involved the purchase of a lipstick containing lead, the content of which was not subject to FDA regulation. Id. at *2-3. However, the lead content of the lipstick appeared dangerous when compared to the lead content regulation imposed by the FDA on candy. Id. In the absence of an FDA regulation concerning lead content in lipstick, or other legal prohibition, the plaintiff could not "seek a remedy for a harm that she ha[d] not actually or allegedly suffered." Moreover, this Court accorded great weight to the decision in Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003), concluding that the "plaintiffs' allegation of an economic injury in a products liability action was insufficient to establish injury-in-fact" because "without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs." Id. at *13-14. Therefore, the Williams Court "remarked that benefit of the bargain injury could not sustain a claim of injury in fact." Id.

      While the Court agrees that the assertion of an economic injury is not an automatic bar to

standing, Koronthaly demonstrates that an exception has been recognized in the context of claims concerning defective products, absent a specific legal prohibition precluding particular ingredients or usages. Insofar as Plaintiffs claims pertain to allegedly toxic chemicals that have not been banned by the FDA for use in cosmetics, including 1,4-dioxane and formaldehyde, in accordance with Koronthaly, this Court concludes that any potential injury is too remote, hypothetical and/or conjectural to establish standing in this matter. However, insofar as Plaintiffs' claims pertain to methylene chloride, a chemical explicitly banned for use by the FDA in any cosmetic, this Court declines to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing. As alleged, Plaintiff Boyd only purchased J&J's Baby Shampoo, which contains methylene chloride, (Pl. Compl., ¶¶ 8, 44) and Plaintiff Pollack only purchased Aveeno Baby Wash and Shampoo, which does not contain methylene chloride. (Pl. Compl., ¶¶ 9, 54) At this stage, only Plaintiff Boyd is permitted to proceed with respect to her claims concerning J&J's Baby Shampoo. Any claims pertaining to Plaintiff Pollack's use of Aveeno Baby Wash and Shampoo are dismissed in their entirety.

  B. Choice of Law

  As a federal district court sitting in diversity, this Court must apply the choice of law rules of New Jersey, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). New Jersey's choice of law rules mandate that the determinative law is that of the state with the greatest interest in governing the particular issue. The first step is to determine whether a conflict exists between the law of interested states, and then any conflict shall be determined on an issue-by-issue basis. "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the court

should avoid the choice-of-law question." <u>Williams v. Stone</u>, 109 F.3d 890, 894 (3d Cir. 1997). If there is a conflict, then the court must identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation. If the state's law is not related to its contacts with the litigation, then the state does not have an interest in having its law applied to the underlying issue. <u>See Vezey v. Doremus</u>, 510 A.2d 1187, 1189 (N.J.1986). That is, if there is an actual conflict between the two states' laws, the court then determines "which state has the most meaningful connections with and interests in the transaction and the parties." <u>Spence-Parker v. Del. Riv. & Bay Authority</u>, 2009 U.S. Dist. LEXIS 75187, *20 (D.N.J. Aug. 21, 2009). Where no actual conflict of law exists, no choice of law need be made. <u>See Zavala v. Wal-Mart Stores, Inc.</u>, 393 F. Supp. 2d 295, 333 (D.N.J. 2005). "If there is no actual conflict, the court must apply the law of New Jersey." <u>LNT Merck Co. v. Dyson, Inc.</u>, 2009 U.S. Dist. LEXIS 62308, *6 (D.N.J. July 21, 2009) (citing <u>Lebegern v. Forman</u>, 471 F.3d 424, 428 (3d Cir. 2006)). In that instance, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be decided under New Jersey law. <u>See Gallerstein v. Berkshire Life Ins. Co. of America</u>, 2006 U.S. Dist. LEXIS 64487, *3 (D.N.J. Sept. 11, 2006).

The parties' moving papers recognize that the outcome is the same regardless of whether New Jersey State Law, Colorado State Law, or Pennsylvania State Law is applied to this diversity action. Therefore, the parties assert that no conflict of laws issue is present in the instant matter.

        1.        New Jersey State Law Breach of Warranty, Consumer Fraud and Unjust Enrichment Claims

Defendant asserts that dismissal is required with respect to all Plaintiffs' claims because the claims are based on alleged harm caused by a product and as a consequence, are subsumed by the

New Jersey Product Liability Act ("PLA"). Plaintiffs argue that the PLA does not subsume Plaintiffs' UCC or consumer protection claims because Plaintiffs neither assert themselves as "claimants" nor allege present or future physical injuries as a consequence of Defendant's products. Plaintiffs further allege that the heart of the present matter is the economic harm caused by Defendant's misrepresentations, omissions and breaches of warranty. Additionally, Plaintiffs contend that the instant matter does not present a risk of double recovery, and that the claims asserted do not constitute a failure to warn cause of action pursuant to the PLA.

The New Jersey Supreme Court decision in Sinclair v. Merck & Co. is instructive. In Sinclair v. Merck & Co., the Plaintiffs "alleged that as a result of their direct and prolonged consumption of Vioxx, they are at enhanced risk of serious undiagnosed and unrecognized myocardial infarction, commonly referred to as 'silent heart attack,' and other latent and unrecognized injuries." 195 N.J. 51, 55 (2008). In that case, the plaintiffs asserted claims for negligence, violation of the Product Liability Act, violation of the Consumer Fraud Act, breach of express and implied warranties and unjust enrichment. Id. In dismissing the complaint in its entirety, New Jersey Supreme Court determined the following,

> [p]laintiffs seek to avoid the requirements of the PLA by asserting their claims as CFA claims. However, the Legislature expressly provided in the PLA that claims for "harm caused by a product" are governed by the PLA "irrespective of the theory underlying the claim." N.J.S.A. 2A:58C-1b(3). We explained in Lead Paint, supra, that "[t]he language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." 191 N.J. at 436-37. As a result, we declared that "[i]n light of the clear intention of our Legislature to include all [product liability] claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of" the PLA. We reach the same conclusion here.
>
> The language of the PLA represents a clear legislative intent that, despite the broad

>     reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product. The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim. Plaintiffs' CFA claim does not fall within an exception to the PLA, but rather clearly falls within its scope. Consequently, plaintiffs may not maintain a CFA claim.

Id.[1] [2]

Similarly, at the heart of this matter is the potential for harm caused by the defective products, J&J Baby Shampoo and/or Aveeno Baby Shampoo and Wash, containing allegedly "toxic chemicals linked to increased cancer risk, adverse skin reactions, and other serious health problems." (Compl., ¶ 2). Further, Plaintiffs allege that the products were rendered useless "because they were contaminated with dangerous and potentially cancer-causing chemicals and continued use of the products would require Plaintiffs and Class Members to knowingly continue and even increase the exposure of their vulnerable infants and children to the harmful contaminants." (Compl., ¶ 2).

Consistent with the Sinclair decision, this Court concludes that the PLA subsumes all of Plaintiffs' claims, effectively precluding Plaintiffs' claims with respect to the CFA, and otherwise, in the absence of "harm" as defined by the PLA. The Court does not agree that articulating a claim in terms of pure economic harm where the core issue is the potential injury arising as a consequence

---

[1] Although this Court permitted the CFA claims to proceed in Nafar v. Hollywood Tanning Sys., Inc., in that case, the Plaintiff's claims and basis for distinction of the CFA from the PLA was the purchase of services, rather than the purchase of a defective product. 2007 U.S. Dist. LEXIS 26312, *12-14 (D.N.J. Apr. 5, 2007). CFA claims rooted in services are clearly distinguishable from claims grounded in products. The present action does not involve a claim for defective services.

[2] Further, In re Ford Motor Co. E-350 Van Products, 2008 U.S. Dist. LEXIS 73690, *48 n.9 (D.N.J. Sept. 3, 2008), where the Court found the Sinclair case "inapposite" "because, by design, the PLA 'except[s] actions for harm caused by breach of an express warranty[,]' which plaintiffs expressly allege[d]." On the basis of an express warranty, the Court concluded that Sinclair decision "does not mandate dismissal of unjust enrichment and state consumer fraud claims where a party does not plead a PLA claim." Id.(internal citations omitted). Plaintiffs do not assert a claim for breach of an express warranty in the present action.

of the products' allegedly harmful chemicals converts the underlying defective product claim into an independent and unrelated consumer fraud issue. Indeed, Plaintiffs' original Complaint contains a cause of action for products liability strategically omitted from the amended Complaint. Limiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the PLA.

The assertion of a claim pursuant to the PLA is premised upon a requisite level of harm, including:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1b(2). Harm, for purposes of the PLA, does not include pure economic loss. Insofar as Plaintiffs concede that their injury is purely economic, Plaintiffs' claims cannot survive. Therefore, with respect to New Jersey law, in accordance with Sinclair, Plaintiffs' Complaint is dismissed in its entirety.

>> 2. Colorado State Law Breach of Warranty, Consumer Fraud and Unjust Enrichment

Despite the parties' respective beliefs that there is no conflict of law issue present in the instant matter, it is not clear to the Court that product liability laws of Colorado subsume related claims in the same manner as the New Jersey PLA[3]. Therefore, upon dismissal of all New Jersey State Law claims and for purposes of inclusion, the Court will proceed by addressing the viability of Plaintiffs' claims under Colorado State Law. If Plaintiff Boyd has asserted viable claims pursuant to

---

[3] The Court will not address the viability of Plaintiffs' claims pursuant to Pennsylvania law since Plaintiff Pollack's portion of the Complaint was dismissed for lack of standing.

Colorado State Law, then a conflict of law exists and the Court will undertake to ascertain which state has the superior interest in the litigation.

### i. Consumer Fraud

Defendant contends that Plaintiffs have no viable claims pursuant to Colorado State Laws because Plaintiffs fail to allege any non-speculative, ascertainable loss and fail to plead their claims with particularity in accordance with Fed. R. Civ. P. 9(b). Plaintiff Boyd claims that "ascertainable loss is not a distinct element under [the Colorado Consumer Protection Act ("CCPA")], and [pursuant to Colorado State Law], the Court may look to its analysis of other states' laws." (Pl. Br. at 33). Plaintiff also alleges that she suffered "ascertainable loss to the extent [she] paid for a product and got something less than what was promised." (Pl. Br. at 28).

"[A] CCPA claim arises when a party knowingly makes a misrepresentation or makes a false representation that has the capacity to deceive." Rhino Listings USA, Inc. v. Rocky Mountain Rhino Listings, Inc., 62 P.2d 142, 148 (Colo. 2003). The CCPA "deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." Id. at 146. To prove a private cause of action under COLO. STAT. ANN. § 6-1-113, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." Hall v. Walter, 969 P.2d 224, 234 (Colo. 1998). "The CCPA is silent as to specific injuries for which it

intends to provide a remedy." Id. at 236 See also Crowne v. Tull, 126 P.3d 196, 209 (Colo. 2006). "[The CCPA's] focus lies with defining prohibited actions that are likely to injure the public and specifying civil penalties and private remedies available for these violations." Hall, 969 P.2d at 224. "[I]n determining whether conduct falls within the purview of the CCPA, it should ordinarily be assumed that the CCPA applies to the conduct...because of the strong and sweeping remedial purposes of the CCPA." Showpiece Homes Corp. v. Assurance Co. of Am., 38 P.3d 47, 51 (Colo. 2001). Given the CCPA's policy of providing a private action where a defendant's conduct has a significant impact on the public, Plaintiff Boyd's claims pertaining to J&J Baby Shampoo may proceed under Colorado State Law.

Although foreclosed by application of the PLA in the instant case, the CFA was enacted to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Smith v. Alza, 400 N.J. Super. 529, 552 (2008). "The CCPA was enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public." Rhino Listings, 62 P.2d at 146 (citing People ex rel. Dunbar v. Gym of America, Inc., 493 P.2d 660, 667 (Colo. 1972)).

Beyond the underlying governmental purpose of the CCPA, Plaintiff Boyd in this action resides in Colorado and presumably, the purchase of the allegedly defective product occurred in Colorado. J&J is a New Jersey corporation engaged in business throughout the United States, including Colorado. Therefore, Colorado State contacts in the instant matter seem to outweigh New Jersey State contacts. Colorado State Law prevails with respect to this issue.

###### ii. Breach of Implied Warranty

Defendant asserts that Plaintiffs' breach of implied warranty claims should be dismissed because Plaintiffs' Complaint fails to allege that the products were not merchantable or failed to perform the function for which they were sold, and because the complaint fails to allege any purpose that is separate and apart from the ordinary purpose. (Def. Br. at 33-34). Plaintiffs' Complaint asserts a claim for breach of implied warranties because the goods were allegedly not fit for their ordinary purpose or particular use on children and further, because the products fail to conform to the promises and representations made on the labels. Specifically, Plaintiffs allege that the products are not merchantable because they are contaminated with methylene chloride. (Pl. Br. at 35-36).

"Colorado case law recognizes that [warranties of merchantability and fitness for a particular purpose] may coexist when there is sufficient evidence to support the creation of each warranty." Palmer v. A.H. Robins Co., Inc., 684 P.2d 187, 209 (Colo. 1984). "Under Colorado [State] [L]aw, a warranty of fitness for a particular purpose does not arise when a product is purchased for the ordinary purpose for which the device or product is to be used." Hauck v. Michelin North Am., Inc., 343 F.Supp.2d 976 (D. Colo. 2004) (citing Weir v. Federal Insurance Co., 811 F.2d 1387, 1393 (10th Cir. 1987)). "To establish a prima facie case for breach of implied warranty for fitness for a particular purpose, the plaintiff must show that: (1) the defendant sold and impliedly warranted the product to be fit for a particular purpose; (2) the plaintiff was reasonably expected to use the product; (3) the product was not suitable for the purpose warranted; and (4) the breach was a cause of the plaintiff's injuries." Simon v. Coppola, 876 P.2d 10 (Colo. Ct. App. 1993). "[W]arranties of merchantability, if all other statutory prerequisites have been met, arise in every contract for sale, unless properly excluded." Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc., 797 P.2d 835, 838

(Colo. Ct. App. 1990).

> In order for goods to be merchantable, they must be at least as such as:
>
> (a) pass without objection in trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

COLO. STAT. ANN. § 4-2-314. Assuming, without concluding, that the descriptive messages on the alleged defective products constitute promises or affirmations, then, in accordance with the foregoing limitations, Plaintiff's claims for breach of implied warranties pursuant to Colorado State Law are permitted to proceed.

Although foreclosed by application of the PLA in the instant matter, the underlying purpose of the UCC as recognized by the New Jersey Supreme Court, is "to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among various jurisdictions." N.J.S.A. 12A:1-102(1); Alloway v. General Marine Indus., L.P., 149 N.J. 620, 630 (1997). Codified under title 4 of Colorado State Law, Colorado State Law adheres to the same underlying purposes as New Jersey. See Proactive Tech., Inc. v. Denver Place Assoc. Ltd. P'ship, 141 P.3d 959, 961 (Colo. Ct. App. 2006). Similar to the foregoing analysis, Colorado's contacts with the

representative Plaintiff and the transactions that are the source of Plaintiff Boyd's claims favor the application of Colorado law over New Jersey with respect to this issue.

### iii. Unjust Enrichment

Defendant asserts that unjust enrichment is not a proper remedy available in this case because Plaintiffs fail to assert that the products failed to perform. By contrast, Plaintiffs assert that they purchased the products conferring a monetary benefit upon the Defendant for useless products that they would not otherwise have purchase, but for the representations that the products were safe, gentle and/or mild. To sustain a claim for unjust enrichment under Colorado law, a plaintiff "must prove that: (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008). "Actions seeking monetary damages are considered legal while actions seeking to invoke the coercive power of the court, such as those seeking injunctions or specific performance, are deemed equitable." American Family Mut. Ins. Co. v. DeWitt, 218 P.3d 318, 324 (Colo. 2009) (citing Paterson v. McMahon, 99 P.3d 594, 597-98 (Colo. 2004)); see also Salzman v. Bachrach, 996 P.2d 1263, 1265 (explaining restitution is an equitable remedy). Generally, equitable remedies are not available, however, when there is a "plain, speedy, [and] adequate remedy at law." Szaloczi v. John R. Behrmann Revocable Trust, 90 P.3d 835, 842 (Colo. 2004). "When plaintiffs have an adequate remedy at law for damages, [equitable remedies] will not lie." Mahoney Marketing Corp. v. Sentry Builders of Colorado, Inc., 697 P.2d 1139, 1140 (Colo. Ct. App. 1985). Plaintiff explicitly and exclusively alleges economic injury. Therefore, there is no indication that a remedy at law would be inadequate. To the extent that Plaintiff Boyd asserts a claim for unjust enrichment pursuant to Colorado State Law, Plaintiff's Complaint is dismissed.

**IV.** C<small>ONCLUSION</small>

For the foregoing reasons, Defendant's motion is **granted in part** and **denied in part**. Plaintiff's Complaint is **partially dismissed without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). An appropriate Order accompanies this Opinion.

                                                             S/ Dennis M. Cavanaugh

Dated:       May   31  , 2010                        Dennis M. Cavanaugh, U.S.D.J.
cc:          All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File